PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-4365

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/07/99
THOMAS K. KAHN
CLERK

D. C. Docket No. 95-0979-CR-LCN

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIM EATON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 7, 1999)**

Before BLACK, and BARKETT, Circuit Judges, and CUDAHY[*], Senior Circuit
Judge.

PER CURIAM:

_____

[*] Honorable Richard D. Cudahy, Senior U.S. Circuit Judge for the Seventh Circuit, sitting
by designation.

Appellant Tim Eaton appeals his convictions for various crimes related to the importation of red tail boa constrictors and other snakes into the United States from Peru. Specifically, a jury found Appellant guilty of conspiracy to import and deal in illegally imported wildlife, in violation of 18 U.S.C. § 371 (Count 1); two counts of illegal importation of wildlife, in violation of 18 U.S.C. § 545 and 18 U.S.C. § 2 (Counts 2 & 3); and two counts of dealing in illegally imported wildlife, in violation of 16 U.S.C. § 1538(c)(1) (Counts 4 & 5). Appellant raises several issues on appeal, but only one warrants discussion: whether the district court erred in refusing to instruct the jury on Appellant's requested entrapment-by-estoppel defense.[1] Appellant bases his request for an entrapment-by-estoppel jury instruction on two factual scenarios presented at trial. First, he claims he reasonably relied on a decade-long pattern of Government agents allowing importation of red tail boas and other snakes when hand-carried in the luggage of missionaries traveling to the United States from Peru. Second, he alleges he relied upon an unnamed Government inspector's statement to him that importation of hand carried amounts of an herb called Cat's Claw is permissible without a permit or customs declaration. Neither factual scenario

---

[1] We affirm without discussion as to Appellant's arguments that his indictment was insufficient and the district court's deliberate ignorance jury instruction was erroneous. *See* 11th Cir. R. 36-1. Appellant's claim that the Government bribed three co-conspirators who testified at Appellant's trial in return for immunity from prosecution in violation of 18 U.S.C. § 201(c)(2) is precluded by this Court's recent decision in *United States v. Lowrey*, 166 F.3d 1119, 1121 (11th Cir. 1999).

2

supports Appellant's request for an entrapment-by-estoppel jury instruction, and we therefore affirm.

## I. BACKGROUND

Appellant was arrested in 1993 for smuggling red tail boa constrictors and other snakes[2] into the United States from Peru, in violation of the Endangered Species Act and customs laws. The Endangered Species Act makes it unlawful to "engage in any trade in any specimens contrary to the provisions of the Convention [on International Trade in Endangered Species of Wild Fauna or Flora (CITES)]." 16 U.S.C. § 1538(c)(1). CITES requires importers to have a CITES export permit from the country of origin when importing species listed in Appendix II of the treaty, such as boa constrictors. Peru, a signatory to CITES, has enacted its own indefinite ban on the export of boa constrictors, and therefore does not issue CITES permits for their export.

There is a narrow "personal baggage" exception to the prohibition against importing any wildlife or plant listed in Appendix II of CITES. That exception states that the prohibition against importation

> shall not apply to wildlife or plants that are accompanying personal baggage . . . [p]rovided, that this exception shall not apply to . . . [i]mportation by U.S. residents of wildlife or plants listed in

---

[2] All of the species of snakes Appellant imported are protected under the same laws as boa constrictors.

Appendix II that were taken from the wild in a foreign country, if that country requires export permits.

50 C.F.R. § 23.13 (d)(2). Accordingly, U.S. residents may not import boa constrictors, regardless of quantity, without a CITES export permit.

At trial, several missionaries from South American Missionaries (SAM) testified they had carried one or two snakes at a time into the United States in their personal luggage without CITES permits and knew other missionaries had done so as well. The missionaries also testified that customs officials had seized snakes from them when they tried to bring in more than two at a time.[3] The Government concedes that on more than one occasion customs inspectors allowed the missionaries to bring one or two snakes at a time into the country because they misunderstood the personal baggage exception of 50 C.F.R. § 23.13(d)(2).

In late 1992, Appellant left his position as a pilot with SAM to found his own Peruvian missionary program. To raise money for the new mission, Appellant attempted to import several items, including snakes and Cat's Claw.

---

[3] At trial, the missionaries acknowledged that some missionaries deceived customs officials by using "the coffee method." Upon entering the country, a missionary would check "yes" in answer to question 9 on the Customs Declaration form, which asks whether the traveler is bringing food or animals into the United States. If a customs official made further inquiry, the missionary would tell the official that he was bringing in coffee. Only if the inspector specifically asked about snakes would the missionary say that he was carrying snakes for use as personal pets.

In February 1993, Appellant hand-carried 14 red tail boas into the United States from Peru. He did not have a Peruvian-issued CITES permit, nor did he complete the required Fish and Wildlife Service Form 3-177. Appellant testified he declared those boas to customs upon his arrival in the United States and declared them to Fish and Wildlife Services sometime later. He sold the 14 snakes to snake collector Carl May, who had in the past bought snakes from several other SAM missionaries. May bought the 14 snakes based upon Appellant's assurances they had been declared and were legal.

After May bought Appellant's initial shipment of 14 boas, Appellant and May attempted to establish a legal snake importing business to raise money for Appellant's missionary work. Appellant went to the Fish and Wildlife Services office at Miami International Airport to inquire about the legal requirements for importing "large quantities" of boas, and was told about the CITES requirement. A few days later, Fish and Wildlife Service Special Agent Bepler told Appellant that CITES export permits were required to import snakes for commercial purposes. Bepler also told Appellant that animals brought into the United States had to be reported on both a customs declaration form and a Fish and Wildlife form 3-177. Appellant told Bepler he planned to go to Peru to obtain a CITES permit. May also learned of the CITES

5

permit requirement and told Appellant about it. Appellant responded he would use family connections in the Peruvian government to obtain CITES permits.

In April 1993, Appellant traveled to Peru to attempt to obtain CITES permits. Appellant's efforts proved unsuccessful, but he told May he still planned to import small quantities of snakes because he "had gone to a lot of expense and trouble." Appellant subsequently attempted to sell 20 snakes to May, but May feared the snakes had been illegally imported and refused to purchase the snakes. Instead, May put Appellant in touch with snake collector Jeff Ronne.

Ronne purchased 14-20 snakes from Appellant in May 1993, and purchased an additional seven shipments of snakes, totaling about 120 snakes, from Appellant over the next five months. Appellant told Ronne he could not obtain CITES permits but could legally obtain red tail boas. Appellant's Peruvian partner, Ricardo Tedaldi, obtained the snakes and recruited couriers to bring the snakes into the country in their personal luggage.[4] After agents seized a dozen snakes Appellant's wife attempted to ship to Ronne in October 1993, Appellant admitted to Agent Bepler that he never asked the couriers if they declared the snakes, and he figured the couriers who didn't

_____

[4] At trial, Appellant denied arranging the importation of snakes through Tedaldi in May 1993. He also claimed Tedaldi had a Peruvian authorization letter for hand-carrying snakes out of Peru, although he did not produce the letter.

arrive at the airport as planned had been "caught." He also admitted he knew about the CITES requirement but had been unable to obtain the permits from Peru.

Also in May 1993, Appellant hand-carried 40 pounds of Cat's Claw from Peru to the United States. Appellant claims he asked an unidentified customs agent whether he needed a CITES permit for Cat's Claw, and the customs official told him he did not need a permit for hand-carried amounts of the plant.[5] Appellant then asked the official "what other items require CITES?" and was told "as long as it's hand carried, it does not need a CITES permit."

At trial Appellant testified he believed CITES permits were only required to bring in "large quantities" of snakes. He based his belief on the fact that other missionaries had hand-carried small quantities of snakes into the United States for at least a decade with approval from customs officials, and on the discussion he had with the unidentified customs agent when he hand-carried the Cat's Claw in May, 1993.

Based on this belief, Appellant requested the following jury instruction:

> Defendant Timothy Eaton, moreover, contends that he is not guilty of the crime charged. Ordinarily, a citizen may not be punished for actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach. Entrapment by estoppel focuses on the conduct of the government officials, not on the state of mind of the defendant. Entrapment by estoppel applies when an official states

---

[5] The Government presented uncontroverted evidence at trial that Cat's Claw, also know as Una de Gato or Uncaria Tomentosa, is not a CITES-protected species. However, we will assume for the purposes of this appeal that Appellant reasonably believed Cat's Claw was a CITES-protected species.

that certain conduct is legal and the defendant relies on what the official stated. Therefore, if you find that the defendant reasonably relied on official statements that it was no violation to bring small quantities of snakes into the United States, you may not find the defendant guilty of conspiracy or smuggling as charged. Further, it is not necessary that the government tell this directly to Tim Eaton, or that he even knew of these statements when he brought in or received the snakes in Miami.

The district court decided, "in an abundance of caution," to instruct the jury that entrapment-by-estoppel was Appellant's theory of defense. However, the court rejected the wording of the instruction proposed by the defense, and instead instructed the jury that:

It is the defendant's theory of defense that he cannot be found guilty of the crimes charge in the indictment because he was: one, informed by a customs inspector that he could bring into the United States items protected by CITES without a permit, even for resale, as long as they were in his luggage; and two, he reasonably relied on this information in committing the acts charged in the indictment.

This appeal follows.

## II. DISCUSSION

This Court will only reverse a district court's refusal to give a specific proposed jury instruction when the "rejected instruction was substantively correct, the actual charge to the jury did not substantially cover the proposed instruction, and the failure to give the request substantially impaired the defendant's ability to present an effective defense." *United States v. Martinez*, 83 F.3d 371, 376 (11th Cir. 1996). We find none of these factors in this case.

The law of entrapment-by-estoppel in this Circuit is very clear. "Entrapment-by-estoppel is an affirmative defense that provides a narrow exception

8

to the general rule that ignorance of the law is no defense." *United States v. Funches*, 135 F.3d 1405, 1407 (11th Cir. 1998). "To assert this defense successfully, a defendant must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable—given the identity of the official, the point of law represented, and the substance of the misrepresentation." *Id*. The defense "focuses on the conduct of the [G]overnment officials, not on the state of mind of the defendant." *United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994).

Appellant's proposed instruction misstated this law. The conduct of the Government officials in this case does not give rise to the objectively reasonable reliance necessary for an entrapment-by-estoppel defense. First, Appellant's reliance on the perceived pattern of Government agents allowing other missionaries to import snakes in their personal luggage is misplaced. For a statement to trigger an entrapment-by-estoppel defense, it must be made directly to the defendant, not to others.[6] The defense applies only "when an official *tells a defendant* that certain conduct is legal," *United States v. Thompson*, 25 F.3d at 1564 (emphasis added)

---

[6] Even if Appellant could legally rely on what others were told, in this case such reliance would be unreasonable. At the very least, Appellant knew many of the missionaries were using the coffee method to conceal their activities, which he should have known would not be approved by any Government official. In fact, because Appellant brought in more than one or two snakes for personal use, his actions went well beyond the exception even if he had been informed of it directly by Government officials.

(citations omitted). Were this not so, the "narrow exception" would swallow the rule and eviscerate the long-standing notion that ignorance of the law is no defense to a crime. *See, e.g., Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 68, 30 S. Ct. 663, 666 (1910).

Second, Appellant's reliance on the unidentified customs agent's statements to him when he imported the Cat's Claw is not objectively reasonable. Appellant claims after the customs official allowed him into the United States with the Cat's Claw, he asked the official "what other items require CITES?" and was told "as long as it's hand carried, it does not need a CITES permit." This exchange was too vague to allow Appellant to reasonably rely upon it when importing dozens of snakes. The official as described by Appellant was merely a customs official, with no expertise in Fish and Wildlife issues, and his sweeping statement could be construed several ways. Appellant was not justified in drawing the inference from a plant to a live animal anymore than he would have been justified in applying an official misstatement about apples to justify importing oranges.[7]

Additionally, Appellant was not justified in relying on any Government practice or statement because of the overwhelming evidence he was aware of the CITES

---

[7] Indeed, at least the proverbial apples and oranges are both plants. In this instance, Appellant is asking us to allow him to draw an inference between apples and aardvarks, and this we will not do.

requirement. Soon after Appellant's February 1993 importation, Carl May told Appellant the snakes might be illegal. When Appellant actively sought out the counsel of unidentified customs agents at the Miami airport he was told about the CITES requirement. In a subsequent conversation, Agent Bepler outlined the requirements for commercial importation. Yet when Appellant's attempt to obtain CITES permits fell through, he continued with his plans to import large quantities of snakes by trying to exploit an exception to the CITES requirement intended to allow people relocating internationally to bring their pets with them for personal use.

Appellant himself undermined the reasonableness of his reliance when he admitted he assumed the couriers who did not arrive as scheduled had been "caught." Appellant should have known that if the couriers were in danger of being caught, their actions were illegal.

## IV. CONCLUSION

Appellant was not entitled to his requested entrapment-by-estoppel jury instruction. The instruction Appellant requested was substantially incorrect, and Appellant's ability to present an effective defense was not impaired by the district court's decision to give a different jury charge that covered the proposed jury instruction. The district court therefore did not err in refusing to give Appellant's requested instruction.

AFFIRMED.