[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-11671

_____

D. C. Docket No. 02-00172-CR-1-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 2, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERNEST CLIFFORD MILLER,
a.k.a. Ernest Miller,
a.k.a. Earnest C. Miller,
a.k.a. Earnest Clifford Miller,
a.k.a. Leroy Miller,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 2, 2005)

Before TJOFLAT, PRYOR  and ALARCÓN[*], Circuit Judges.

PER CURIAM:

_____

[*] Honorable Arthur L. Alarcón, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Ernest Clifford Miller appeals the judgment of conviction and sentences entered against him for being a felon in possession of firearms and ammunition. Miller was arrested and then convicted after he retrieved guns and ammunition confiscated by the Atlanta Police Department at houses of prostitution run by Miller. Miller raises nine issues on appeal: Miller argues that (1) the district court erroneously refused to give an entrapment instruction; (2) the evidence was not sufficient to sustain the convictions; (3) the evidence against him should have been suppressed; (4) section 922(g) exceeds the commerce clause power; (5) the district court erroneously limited Miller's cross examination of a government witness; (6) the district court admitted the testimony of Michelle Hudnall in violation of Rhode Island v. Innis, 446 U.S. 291, 100 S. Ct. 1682 (1980) and Massiah v. United States, 377 U.S. 201, 84 S. Ct. 1199 (1964); (7) his sentence violated Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004); (8) the indictment was multiplicitous; and (9) the district court erroneously denied a mistrial. Because we conclude that (1) the evidence against Miller was seized in good faith reliance on a warrant, and the district court correctly denied Miller's motion to suppress; (2) Miller cannot show that his substantial rights were affected by the reliance of the district court on mandatory sentencing guidelines during sentencing; (3) the district court did not err in refusing to dismiss the indictment as multiplicitous; and (4)

2

Miller's other arguments are likewise without merit, we affirm Miller's convictions and sentences.

## I. BACKGROUND

In 2001, Officer Richard Mason of the Atlanta Police Department began investigating a prostitution ring, which was operated by Miller, a convicted felon. After receiving information from a confidential informant about the prostitution ring, Officer Mason met with "Black" who ran the ring for Miller. "Black" advised Officer Mason about the operations of the prostitution ring, including the number of prostitutes and how they were treated, the fees charged, the type of clientele, Miller's role in the operations, and the houses, located on Grand Avenue in Atlanta, at which all the activities took place.

After conducting surveillance of the houses on Grand Avenue and receiving corroborating evidence from the confidential informant, Officer Mason signed an affidavit to obtain warrants to search the eight houses used by the prostitution ring. The affidavit described in detail the location and appearance of the houses and the information received from "Black." The affidavit also stated that Officer Mason believed that he would find the following items connected with the prostitution ring:

> illegal narcotics, money, scales, firearms, ammunition, records, receipts and or any items used to facilitate the sale, manufacture, or

transporting of illegal narcotics proceeds, and or any items that may be used as evidence to support charge of VGCSA and or any items that may be used as evidence to support the charge of pimping or prostitution.

Based on Officer Mason's affidavit, a Fulton County Superior Court Judge issued search warrants for the residences.

The warrants were executed on December 20, 2001. During the searches, Atlanta police officers found a box of .380 caliber ammunition in the kitchen of 2746 Grand Avenue, a Bryco .380 caliber handgun at 2754 Grand Avenue, and a .357 magnum revolver at 2775 Grand Avenue. The officers also seized evidence from 2746 Grand Avenue, such as utility bills and building permits, that tended to show Miller's residence or connection with the residences. Miller was not present during the searches, but his vehicle was parked in front of 2754 Grand Avenue.

Georgia decided not to prosecute Miller, and Officer Mason was instructed to return the seized property. Before the property was returned, Miller and his attorney repeatedly called the Atlanta Police Department and requested the return of the property. Officer Mason returned some of the property but withheld some property, including the firearms and ammunition because Miller was a convicted felon. After discussing the matter with the Assistant United States Attorney and agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF), Officer Mason arranged to return the remainder of the property to Miller on February 12, 2002.

4

ATF agents planned to arrest Miller if he took possession of the firearms and ammunition.

On February 12, 2002, Miller arrived at the Atlanta Police Department with a companion and signed a release form for his property, including the firearms and ammunition. The property was moved to the loading dock, where Miller's companion handed the guns to Miller. Miller was arrested by ATF agents. At the time of the arrest, the firearms had been moved from the property cart to the floorboard of Miller's vehicle. The ammunition was still in its evidence bag on the edge of the loading dock.

Miller was indicted on ten counts relating to his possession of the firearms and ammunition on December 20, 2001, and February 12, 2002. Following multiple pre-trial motions, including a motion to dismiss the indictment as multiplicitous and a motion to suppress, both of which were denied, the government dismissed Counts Three, Five, Eight, and Ten of the indictment. The case proceeded to trial on Counts One, Two, Four, Six, Seven, and Nine. Miller was convicted by a jury on Counts One, Two, Four, and Nine, and acquitted on Counts Six and Seven. He was sentenced to concurrent sentences of 293 months of imprisonment on all four counts under the Armed Career Criminal Act. Miller appeals.

5

## II. STANDARDS OF REVIEW

Because of the variety of issues raised by Miller, this appeals requires us to run the gamut of standards of review. We review the refusal of the district court to give a proposed jury instruction for abuse of discretion. United States v. De La Mata, 266 F.3d 1275, 1297 (11th Cir. 2001). Evidentiary rulings of the district court and the denial of a motion for mistrial are also reviewed for abuse of discretion. United States v. Lyons, 403 F.3d 1248, 1250 (11th Cir. 2005); United States v. Day, 405 F.3d 1293, 1297 n.4 (11th Cir. 2005). Whether the evidence presented at trial is sufficient to support the criminal conviction is a question of law subject to de novo review. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001). "The evidence is viewed in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor." Id. The denial of a motion for judgment of acquittal is also reviewed de novo. United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005). "We apply a mixed standard of review to the denial of a defendant's motion to suppress evidence, reviewing the district court's findings of fact for clear error and its application of law to those facts de novo." Lyons, 403 F.3d at 1250. We review the denial of a motion to dismiss counts of an indictment as multiplicitous for abuse of discretion, United States v. Howard, 918 F.2d 1529, 1532 (11th Cir.

6

1990), but conduct a de novo review of the legal analysis of the district court regarding multiplicity. United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995); see also United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000) (stating that the Court reviews whether counts in an indictment are multiplicitous de novo). Finally, issues raised for the first time on appeal are reviewed for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

## III.  DISCUSSION

We address Miller's numerous arguments in the order they are presented in Miller's brief on appeal.  We divide our discussion of these issues in nine parts. We reject each of Miller's arguments.

*A. The District Court Correctly Refused to Give Instructions on Entrapment.*

Miller makes two entrapment arguments.  Miller argues that the district court erred when it refused to give the jury instructions on the defenses of entrapment and entrapment by estoppel.  He argues that the evidence introduced at trial showed that he was either entrapped by the Atlanta police into taking possession of the weapons and ammunition, or that he reasonably relied on the representations of the police that it was permissible for him to possess the weapons.  The district court correctly refused to give both charges.

Miller was not entitled to an instruction on entrapment because he failed to

present evidence to support that defense.

> A defendant is not entitled to an entrapment instruction unless he first shows "some evidence, more than a scintilla, that government agents induced him to commit the offense." Once the defendant meets this initial burden, "the question of entrapment becomes a factual one for the jury to decide. In that situation the defendant is entitled to have his defensive theory of the case put before the jury with the appropriate instructions from the trial judge."

United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997) (citations and footnote omitted). Miller's weapons and ammunition were seized from residences on Grand Avenue in Atlanta, and two months later, after repeatedly requesting the return of his property, Miller arrived at the police station to retrieve his property, including the weapons and ammunition. Miller signed a receipt for the items to be released to him and took possession of the weapons. Even assuming the truth of Miller's assertion that he could not read the receipt and did not ask for the weapons to be returned, it is inconceivable that Miller did not know he was taking possession of weapons when he put them into his vehicle.

Miller also was not entitled to an instruction on entrapment by estoppel. "Entrapment-by-estoppel is an affirmative defense that provides a narrow exception to the general rule that ignorance of the law is no defense." United States v. Eaton, 179 F.3d 1328, 1332 (11th Cir. 1999) (internal quotation marks and citation omitted). "To assert this defense successfully, a defendant must

actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable–given the identity of the official, the point of law represented, and the substance of the misrepresentation." Id. (internal quotation marks and citation omitted). "The defense applies only when an official tells a defendant that certain conduct is legal." Id. (internal quotation marks and citation omitted).

Miller's argument depends on a stretch of our case law to reach "implicit" statements. Miller argues that the "implicit directive of the Atlanta Police Department, through Mr. Puckett and Detective Mason, who were not only agents of the State but, in this instance agents of the Federal Government, informed Mr. Miller that it was legal for him to take control of all items that were to be released to him." He argues that the representations of the Atlanta Police Department that all the property would be released to him would have led a reasonable person to believe it was legal to possess the property.

The problem for Miller is that his argument about an "implicit" statement is unsupported in law and his argument otherwise is unsupported by the record. The defense of entrapment by estoppel requires evidence of an affirmative misstatement of law, and there is no evidence that any official told Miller that it was legal for him to possess weapons. Because the defense is unsupported by the

record, the district court correctly refused to give the instruction Miller requested.

### B. The Evidence Was Sufficient to Sustain the Convictions.

Miller argues that the evidence was insufficient to sustain the convictions. All counts in the indictment charged Miller with violations of the statute prohibiting a felon from possessing a firearm or ammunition. 18 U.S.C. § 922(g). An individual is guilty of violating section 922(g) if the individual (1) knowingly possessed a firearm and (2) had been previously convicted of a felony. See United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004).

With regard to Counts One and Two, possession of the firearms on February 12, 2002, Miller erroneously argues that the evidence was insufficient to support the convictions because there was evidence of entrapment. This argument is frivolous. As previously explained, there was no evidence of entrapment.

With regard to Count Four, possession of ammunition on February 12, 2002, Miller argues that because he did not physically retrieve the ammunition from the loading dock, he did not possess it, and that the evidence did not support a finding of constructive possession, but this argument also fails. "A defendant has constructive possession if he exercises ownership, dominion, or control over the firearm. A defendant also has constructive possession if he has the power and intention to exercise dominion or control. The defendant may exercise that

10

dominion and control either directly or through others." Gunn, 369 F.3d at 1235 (citations omitted). When Miller was arrested, the ammunition was on a loading dock, a few feet from Miller's vehicle, and Miller's companion was handing items to Miller. Before moving to the loading dock area, Miller had signed a receipt for the items that included the ammunition. Although the ammunition was in an unmarked paper bag, the evidence was sufficient for a reasonable jury to conclude that Miller had constructive possession of the ammunition on the loading dock.

With regard to Count Nine, possession of ammunition on or around December 20, 2001, Miller erroneously argues that there was no evidence of possession or constructive possession of the ammunition. The evidence presented at trial showed that Miller visited the houses on Grand Avenue. Government witnesses Michelle Hundall and Monica Botts, who had lived with Miller around December 2001, testified that they had seen Miller with guns and ammunition. The ammunition was found on a shelf in the kitchen of 2746 Grand Avenue next to a pill bottle labeled with Miller's name. In the light of the evidence presented with regard to Miller's activities in the various houses on Grand Avenue, the evidence of Miller's possession of firearms and ammunition, and the location of the ammunition when it was seized, a reasonable jury could have concluded that Miller controlled the ammunition found at 2746 Grand Avenue.

11

## C. The District Court Correctly Denied Miller's Motion to Suppress.

Next, Miller argues that the district court erroneously denied his motion to suppress the evidence seized on December 20, 2001, because the search warrants were faulty. Miller argues that the warrants failed to identify sufficiently the places to be searched and the items to be seized. This argument fails.

The warrants issued by the Fulton County Superior Court Judge did not state any details regarding the place to be searched or the items to be seized except by reference to the affidavits. The affidavit, however, stated with particularity the items to be found and the description of each place to be searched. In so far as the warrants issued by the Fulton County Judge contained ambiguities, those ambiguities were cured by the warrant affidavit. United States v. Wuagneux, 683 F.2d 1343, 1350 n.6 (11th Cir. 1982). The warrant and affidavit stated the place to be searched and the items to be seized with sufficient particularity.

Miller also argues that the warrant affidavit did not establish probable cause. The district court agreed that the affidavit did not establish probable cause to search for weapons, but denied the suppression motion. The district court found that the officers were entitled to seize the guns and ammunition because they had an apparent connection to the prostitution operation. See Horton v. California, 496 U.S. 128, 110 S. Ct. 2301 (1990).

In Horton, the Supreme Court held that a seizure of weapons was authorized by the "plain-view" doctrine when the search was authorized by a valid warrant.

> In this case the items seized from petitioner's home were discovered during a lawful search authorized by a valid warrant. When they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence. He had probable cause, not only to obtain a warrant to search for the stolen property, but also to believe that the weapons and handguns had been used in the crime he was investigating. The search was authorized by the warrant; the seizure was authorized by the "plain-view" doctrine.

496 U.S. at 142, 110 S. Ct. at 2310-11. Because of the nature of the activities conducted at the eight residences, and the large cash supply stored in one of the houses, the officers had reason to believe that the weapons and ammunition were connected with the offense.

Furthermore, the exclusionary rule does not require the suppression of evidence that is seized in good faith reliance on a search warrant. United States v. Robinson, 336 F.3d 1293, 1296 (11th Cir. 2003). There is no evidence that the warrant affidavit was dishonest or recklessly prepared, and a reasonable officer could have believed in good faith, based on the affidavit, that there was probable cause to search for weapons and ammunition. The district court correctly denied the motion to suppress the evidence seized on December 20, 2001.

Miller also argues that the district court should have suppressed the weapons found in his vehicle on February 20, 2002, because the vehicle was searched

13

without a warrant. The district court correctly rejected this argument. The evidence showed that the ATF agents seized the weapons from Miller's vehicle after they saw them, through the open door, in plain view on the floor of the vehicle.

*D. Section 922(g) Is a Legitimate Exercise of the Commerce Clause Power.*

Miller argues that the district court erroneously denied his motion for judgment of acquittal because section 922(g) exceeds the power of Congress under the Commerce Clause. This argument fails. We have consistently upheld the constitutionality of section 922(g) against commerce clause challenges. See, e.g., United States v. Wright, 392 F.3d 1269, 1280 (11th Cir. 2004); United States v. Nichols, 124 F.3d 1265, 1266 (11th Cir. 1997). The decision in United States v. Maxwell, 386 F.3d 1042 (11th Cir. 2004), vacated by, United States v. Maxwell, __ U.S. __, 126 S. Ct. 321 (2005), on which Miller relies, does not alter our obligation to adhere to our longstanding precedents on this issue.

*E. The District Court Did Not Abuse Its Discretion When It Limited Cross-Examination of Government Witnesses.*

Miller argues that the district court denied him a fair trial and the opportunity to present a defense when it limited his cross-examination of two government witnesses on the issue of bias. Miller argues that the district court improperly limited his cross-examination of Officer Robbie Gordon and Evidence

14

Technician Vance Puckett when he attempted to question them about the "code of professional courtesy amongst police officers wherein officers will cover for other officers even when they are committing infractions of the law." This argument is without merit.

Miller concedes that the district court permitted a "minimal" amount of cross-examination of Officer Gordon on this issue. The record shows that the district court liberally permitted cross-examination of Gordon on the issue of bias and only limited Miller's cross-examination when the line of questioning had gotten "too far afield" from the present case and was, therefore, not relevant. "[T]he Sixth Amendment only protects cross-examination that is relevant. Thus, a trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Lyons, 403 F.3d at 1255-56 (internal quotation marks, footnote, and citations omitted). The record does not reveal any limitation with regard to Miller's cross-examination of Puckett that was in violation of the Confrontation Clause.

### F. The District Court Correctly Denied Miller's Motion to Exclude Testimony of Another Inmate.

Miller argues that the district court erroneously permitted Michelle Hudnall,

15

a former prostitute for Miller, to testify regarding a conversation Hudnall had with Miller while she and Miller were both incarcerated.  Miller argues that the government violated his Sixth Amendment right to counsel when it deliberately placed him a cell close to Hudnall to obtain incriminating statements from him.  This argument fails.

"To establish his claim, [Miller] 'must show (1) that a fellow inmate was a government agent; and (2) that the inmate deliberately elicited incriminating statements from' him."  Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991) (quoting Lightbourne v. Dugger, 829 F.2d 1012, 1020 (11th Cir. 1987)).  Miller's argument fails on both counts.  Miller has shown neither that Hudnall was a government agent nor that she deliberately elicited incriminating statements from him.  On the contrary, it is undisputed that Miller knew Hudnall was to testify against him and he attempted to intimidate Hudnall into giving false testimony.

### G.  The District Court Did Not Plainly Err When It Sentenced Miller Under the Armed Career Criminal Act.

Miller argues, for the first time on appeal, that the district court erred when it sentenced him under the Armed Career Criminal Act.  Miller's sentence was enhanced because of his previous convictions for serious drug offenses.  He argues that Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), was overruled by Blakely.  This argument fails.  The Supreme Court, in United

16

States v. Booker, specifically excepted previous convictions from its holding:

"Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  543 U.S. 220, __, 125 S. Ct. 738, 756 (2005).  The district court did not err, therefore, when it used Miller's previous convictions to calculate his sentence.

Although the district court did not err in sentencing Miller under the Armed Career Criminal Act, the district court erred when it sentenced Miller under a mandatory guidelines system.  This error is plain after Booker, but Miller cannot show that his substantial rights were affected by the error.  United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005), rehearing en banc denied by 406 F.3d 1261, cert. denied, 545 U.S. __, 125 S. Ct. 2935 (2005).  Within a sentencing range of 235 to 293 months, Miller was sentenced to 293 months, and the sentencing transcript does not evidence that the district court judge would have given Miller a shorter sentence had it applied the guidelines in an advisory manner.

*H.  The District Court Did Not Err When It Refused to Strike
Counts Two Through Ten of the Indictment as Multiplicitous.*

Miller argues that the district court erred when it refused to grant his pre-trial motion to dismiss Counts Two through Ten of the Indictment as multiplicitous.

17

"An indictment is multiplicitous if it charges a single offense in more than one count." Howard, 918 F.2d at 1532. In this Circuit, "[t]he 'simultaneous possession of several weapons constitutes only one offense under Section [922(g)].'" United States v. Grinkiewicz, 873 F.2d 253, 255 (11th Cir. 1989) (quoting United States v. Smith, 591 F.2d 1105 (5th Cir.1979)). The government may treat the weapons as separate units of prosecution "if evidence presented at trial establishes that [the] defendant, at some point in the period covered by the indictment, separated one of the weapons charged in the indictment and possessed that weapon separately–that is, at a different location," or received the weapon at a different time than the other weapons. United States v. Bonavia, 927 F.2d 565, 569 (11th Cir. 1991). Simultaneous possession of a firearm and ammunition also constitutes one offense. United States v. Hall, 77 F.3d 398, 102 (11th Cir. 1996). Because the district court correctly concluded that if the government presented evidence that Miller separately possessed the weapons and ammunition charged in the indictment he could properly be convicted on each count, the district court did not err when it denied Miller's pre-trial motion to dismiss the indictment as multiplicitous.

## I. The District Court Did Not Abuse Its Discretion When it Denied Miller's Motion for a Mistrial.

Lastly, Miller argues that the district court abused its discretion when it

18

refused to grant a mistrial because of alleged government abuses. Miller alleges that the government impermissibly brought his character "into play" when a government witness testified that the box of ammunition was found next to a large supply of condoms, when government witnesses testified that they had seen Miller in possession of firearms before the date alleged in the indictment, when Officer Mason testified that he had approached other prosecutors about prosecuting Miller for crimes not alleged in the indictment, when a government witness testified that Miller was a multi-convicted felon, and when a government witness commented that Miller's appearance had changed, perhaps because he had been in jail. Miller argues that individually and cumulatively the above statements impermissibly introduced his character into the trial and warrant reversal.

We review the denial of a motion for mistrial for abuse of discretion. Lyons, 403 F.3d at 1250. "To prevail on a claim of prosecutorial misconduct, a defendant must not only show improper comments by the prosecutor, but also show those comments prejudicially affected the substantial rights of the defendant." United States v. Snyder, 291 F.3d 1291, 1294 (11th Cir. 2002). There is no evidence that the alleged improper comments prejudiced Miller. On the contrary, any allegation of prejudice is belied by the fact that the jury acquitted Miller on two of the Counts against him. The district court did not abuse its discretion when it denied Miller's motion.

## IV.  CONCLUSION

Because, after a review of the record, we conclude that Miller's numerous arguments on appeal are without merit, we affirm his convictions and sentences.

**AFFIRMED.**