[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12303
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 15, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20656-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE CLARKE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 15, 2005)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

George Clarke appeals his convictions for attempting to obtain a minor to engage in a commercial sex act, 18 U.S.C. §§ 1591(a), 1594(a), attempting to travel in foreign commerce to engage in illicit sexual conduct with another person, 18 U.S.C. § 2423(c), (e), and attempting to induce a minor to engage in prostitution, 18 U.S.C. § 2422(b).  Clarke asserts the district court erred in its (1) interpretation of 18 U.S.C. § 2422(b) when it denied Clarke's motion for judgment of acquittal, (2) refusal to instruct the jury on the defense of entrapment by estoppel, and (3) limitation of Clarke's opening statement and prohibition of expert psychiatric testimony.  The district court did not err, and we affirm Clarke's convictions.

## I.  DISCUSSION

A.  *Statutory interpretation of 18 U.S.C. § 2242(b)*

Clarke asserts his conviction for persuading a minor to engage in prostitution "cannot stand," as he was neither charged with, nor could he have been convicted of, "engag[ing] in any sexual activity (including prostitution) for which any person can be charged with a crime."  According to Clarke, § 2422(b), as written, only makes it a crime to induce a minor to engage in any sexual activity if that sexual activity is criminal.  Clarke claims the statutory construction, specifically, the lack of a comma following the word "prostitution," means the

2

phrase "for which any person can be charged with a criminal offense" must be read to modify the prior phrase "prostitution or any sexual activity." Clarke further asserts based upon this statutory construction of § 2422(b) that Congress only intended to punish a person for engaging in "illegal prostitution" overseas, but "not all forms of prostitution." Moreover, Clarke argues, although Congress has the power to criminalize the conduct of a U.S. citizen who engages in conduct in a foreign country that is deemed legal in that country, Congress only criminalized "engaging in underage prostitution *as defined and proscribed by the law of the jurisdiction in which the act of prostitution occurs*." Accordingly, Clarke argues, the prosecution was required to, but did not, present evidence the type of prostitution in which he intended to engage was "the sort of prostitution for which any person can be charged with a crime in Costa Rica."

"The interpretation of a statute is a question of law subject to *de novo* review." *United States v. Murrell*, 368 F.3d 1283, 1285 (11th Cir.), *cert. denied*, 125 S. Ct. 439 (2004) (citation omitted). Subsection (b) of § 2422 states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 5 years and not more than 30 years.

3

Clarke cites no authority to support his contention the phrase "for which any person can be charged with a criminal offense" must be read to modify both "prostitution" and "any sexual activity." Moreover, prostitution is a form of sexual activity, and Clarke's reading results in the term "prostitution" being superfluous, which must be avoided. *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir.) (en banc) (noting it is a cardinal principle of statutory construction that a statute must be construed such that no clause, sentence, or word shall be superfluous, void, or insignificant), *cert. denied*, 126 S. Ct. 368 (2005). Finally, even if Clarke were correct that the Government was required to show the prostitution in question is illegal in Costa Rica, both Agent Patterson and Detective Love testified it is illegal to engage in prostitution with a minor in Costa Rica. Accordingly, the district court did not err in its interpretation of § 2422(b).

B. *Jury instruction on entrapment by estoppel*

Clarke next contends the district court erred by failing to give an entrapment by estoppel instruction to the jury, as he provided sufficient evidence for the matter to go to the jury. Clarke contends whether he knew Detective Richard Love was acting on behalf of the Federal Bureau of Investigation is irrelevant, as the defense of entrapment by estoppel focuses on the conduct of government officials, rather than on the defendant's state of mind. Clarke explains "law enforcement may not

4

benefit from its own wrongful act," whereby a citizen is prosecuted for engaging in criminal conduct that law enforcement counseled him to undertake. Clarke asserts his reliance on Detective Love was reasonable, especially since Detective Love held himself out to be "a very experienced, qualified, law-abiding purveyor of sex tourism." Moreover, Clarke argues, he was assured by Detective Love the prostitutes were required to be tested for diseases once a month, and Detective Love "acknowledged that the logical and ordinary inference from his representation . . . was that it was the government of Costa Rica that imposed such a requirement." Clarke further argues both Detective Love and the website assured him the sexual activities being offered were "safe" and "secure." According to Clarke, the representations of Detective Love and the website "told a single, consistent, coherent story: the sex tourism being offered to [him] was legal."

The denial of a requested jury instruction is reviewed for an abuse of discretion. *United States v. Trujillo*, 146 F.3d 838, 846 (11th Cir. 1998). "The trial court has authority to refuse to instruct the jury on a defense where the evidence used to support it, if believed, fails to establish a legally cognizable defense." *United States v. Billue*, 994 F.2d 1562, 1568 (11th. Cir 1993). To assert the defense of entrapment by estoppel, a defendant must "'actually rely on a point of law misrepresented by an official of the state; and such reliance must be

5

objectively reasonable—given the identity of the official, the point of law represented, and the substance of the misrepresentation.'" *United States v. Eaton*, 179 F.3d 1328, 1332 (11th Cir. 1999) (citation omitted). "The defense 'focuses on the conduct of the Government officials, not on the state of mind of the defendant.'" *Id.* (citation omitted).

Clarke does not allege Detective Love ever identified himself to Clarke as a law enforcement officer. Clarke knew Detective Love as his alias, Richard Baxter, the owner of CRTV, who provided a travel service whereby clients were connected with prostitutes in Costa Rica. Accordingly, Clarke's reliance on statements made by Detective Love, in the guise of Richard Baxter, was objectively unreasonable, as a reasonable person would not rely upon a pimp for legal guidance. *See id.* Moreover, Clarke points to no statements in the record where he either asked Detective Love about the legality of the services provided by CRTV or Detective Love volunteered that CRTV's services were legal. On the contrary, Detective Love instructed Clarke what Clarke was doing was not "kosher," and Clarke responded he "knew that" and figured as much. Contrary to Clarke's contentions, the terms "secure" and "safe" are not synonymous with "legal." Moreover, Detective Love's statements he occasionally had sex with the prostitutes does not indicate such behavior was legal. Furthermore, as the district court noted, the only

6

"affirmative statement" made by Detective Love, that the prostitutes were required to be tested monthly for disease, was subsequently followed in the conversation by Detective Love's statement to Clarke that the conduct in which he intended to engage was not kosher. Accordingly, the district court did not abuse its discretion by refusing to instruct the jury regarding the defense of entrapment by estoppel.

C. *Fair trial*

Finally, Clarke asserts the "cumulative effect of adverse evidentiary and procedural rulings by the trial court deprived [him] of a fair trial under the 5th and 6th Amendments." According to Clarke, the district court "unfairly limited" his opening statement by (1) excluding the board he intended to use a visual aid, and (2) sustaining objections by the Government when he stated the evidence would show he had not taken any "substantial steps" and law enforcement officers led him to believe the Costa Rican government tested the prostitutes for diseases. Clarke contends as a result he was prevented from "laying two essential building blocks" of his defense, that the evidence would show (1) he had not taken the "substantial step" to distinguish his "non-criminal" conduct from criminal attempt, and (2) law enforcement officers led him to believe the conduct he was planning was "not proscribed by criminal sanctions." Clarke further contends he was prevented from presenting testimony, which supported his defense, by Dr. Haber,

7

who would have testified Clarke (1) was not a pedophile, (2) was not sexually aroused by or attracted to prepubescent females, and (3) suffers from clinical depression.

We review for an abuse of discretion Clarke's claim the district court improperly limited his opening statement. *See United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002) (stating a district judge's conduct of a trial, including opening statements, is reviewed for an abuse of discretion). "A district court's decision regarding the admissibility of psychiatric evidence is generally subject to the abuse of discretion standard of review." *United States v. Westcott*, 83 F.3d 1354, 1357 (11th Cir. 1996).

An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument. *See United States v. Zielie*, 734 F.2d 1447, 1455 (11th Cir. 1984), *abrogated on other grounds by United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988). "The scope and extent of the defendant's opening statement rests largely in the discretion of the trial court." *United States v. Freeman*, 514 F.2d 1184, 1192 (10th Cir. 1975). The court "can exclude irrelevant facts and stop argument if it occurs." *Zielie*, 734 F.2d at 1455.

The Insanity Defense Reform Act provides:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a). When evaluating the admissibility of psychiatric evidence, courts should consider the following principles: (1) "[p]sychiatric evidence of impaired volitional control or inability to reflect on the ultimate consequences of one's conduct is inadmissible whether offered to support an insanity defense or for any other purpose;" (2) "Congress intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other *affirmative defense* such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to *excuse* the offense;" and (3) "Congress was concerned about the danger that expert psychiatric testimony regarding inherently malleable psychological concepts can be misused at trial to mislead or confuse the jury." *United States v. Cameron*, 907 F.2d 1051, 1061–62 (11th Cir. 1990) (internal quotation and citation omitted) (emphasis in original). "Evidence offered as 'psychiatric evidence to negate specific intent' is admissible, however, when such evidence focuses on the defendant's specific state of mind at the time of the charged offense." *Id.* at 1067. "Because psychiatric evidence (1) will only

9

rarely negate specific intent, (2) presents an inherent danger that it will distract the jury[] from focusing on the actual presence or absence of *mens rea*, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of *mens rea*." *Id.* (internal quotations and citation omitted).

As an initial matter, Clarke failed to include the board he intended to use as a visual aid in the record on appeal, as required by Federal Rule of Appellate Procedure 10(b)(2). *See Fernandez v. United States*, 941 F.2d 1488, 1493 (11th Cir. 1991) (holding the appellant is responsible for ensuring all documents buttressing his claims appear in the record). Consequently, we are unable to determine whether the district court abused its discretion by determining Clarke could display only the left-hand side during his opening statement.

Prior to Clarke's opening statement, the court ruled he was prohibited from making legal argument in his opening statement. Clarke, however, repeatedly disregarded the court's ruling regarding the use of legal terms such as "substantial steps," using such language and forcing the Government to object at each instance. In addition, rather than merely stating the evidence that would come out at trial regarding Detective Love's telling him the prostitutes were required to be tested,

10

Clarke argued he was led to believe the Costa Rican government tested the prostitutes for diseases. Contrary to Clarke's contentions, he did not have a right to make legal arguments in his opening statement. *See Zielie*, 734 F.2d at 1455. Moreover, a court is permitted to stop a party from arguing during its opening statement, as occurred in the present case. *See id.* Accordingly, the district court did not abuse its discretion by prohibiting Clarke from making legal arguments during his opening statement.

Clarke also claims the district court abused its discretion by prohibiting expert psychiatric testimony. At the hearing, Dr. Haber testified Clarke intended to take the actions necessary to travel to Costa Rica, and knew what he was "signing up for was not legal." Dr. Haber also testified Clarke was conscious of his actions, had the capacity for self-reflection over the course of the telephone conversations, and had "a requisite understanding of his actions and their consequences." Dr. Haber described her assessment of Clarke's depression as an explanation that provided insight into the motivations behind his actions, but was not an excuse for those actions. Accordingly, even if believed, Dr. Haber's testimony failed to support a legally acceptable theory demonstrating a lack of *mens rea*, but, on the contrary, as she stated, only served to explain Clarke's actions, rather than negate either the knowledge or intent behind those actions. *See Cameron*, 907 F.2d at

11

1067. Consequently, the district court did not abuse its discretion in prohibiting Clarke from presenting expert psychiatric testimony.

## II. CONCLUSION

The district court did not err in its interpretation of 18 U.S.C. § 2422(b). Additionally, the district court did not abuse its discretion when it refused to instruct the jury on the defense of entrapment by estoppel or by limiting Clarke's opening statement and prohibiting expert psychiatric testimony. We affirm Clarke's convictions.

AFFIRMED.