[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 15, 2005
THOMAS  K. KAHN
CLERK

————————————————

No. 04-10551

————————————————

D.C. Docket No. 03-00152-CR-T-30-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY A. DAY,
DONNA R. DAY, et al.,

Defendants-Appellants.

————————————————

Appeal from the United States District Court for the
Middle District of Florida

————————————————

**(April 15, 2005)**

Before MARCUS, FAY and SILER*, Circuit Judges.

FAY, Circuit Judge:

_____
*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Timothy Day and his wife, Donna Day, appeal their convictions and sentences for one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, and 43 counts of mail fraud, in violation of 18 U.S.C. § 1341. Timothy Day was sentenced to 121 months imprisonment, and Donna Day was sentenced to 63 months imprisonment. Edward Hallock ("Hallock") was convicted of one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, and eight counts of mail fraud, in violation of 18 U.S.C. § 1341, and was sentenced to a total of 21 months imprisonment.[1] We affirm all convictions and sentences.

## Background

Timothy Day, Donna Day, and Hallock were among six defendants indicted in a conspiracy to commit mail fraud involving sham not-for-profit organizations (the "Organizations") that solicited money from victim contributors under the pretext that the contributions would be used to assist police officers and their families, firefighters and their families, veterans and their families, substance abusers, and needy youths. Timothy and Donna Day operated and controlled the Organizations, which were registered as charitable organizations and incorporated as: (1) the Police Officers

---

[1] Hallock asserts, for the first time in his reply brief, a challenge to his sentence under Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531, 159 L.Ed. 403 (2004). This Court has a well-established rule that issues and contentions not timely raised in the initial brief are deemed waived or abandoned. See United States v. Levy, 379 F.3d 1241 (11th Cir. 2004) (holding that in the context of a Blakely claim, issues not raised in the appellant's initial brief are deemed waived on appeal).

Foundation, Inc., doing business as the "State Troopers Relief Fund," "Firefighter's Assistance Foundation," and "Firefighter's Foundation"; and (2) the Veterans Assistance Foundation, Inc., doing business as the "Veteran's Foundation," "Drug Abuse Fund," and "Veterans Care Package Program."

Timothy and Donna Day also controlled various bank accounts in the names of the Organizations, into which contributions received from victim donors were deposited. In order to create the false appearance that the solicited funds were used for charitable purposes, they would write checks on one Organization's account made payable to another Organization, shuffling funds between the Organizations. Instead of charitable purposes, the solicited funds were paid into the personal accounts of the various conspirators of the Organizations, including the Days and Hallock.

Hallock participated in the conspiracy by soliciting money from victim donors on behalf of the Organizations, and was paid a percentage of the gross receipts received as a result of his solicitations. Hallock and other co-conspirators would use solicitation materials, including "lead sheets," drafted by the Days to telephone potential donors, many of whom were elderly. The solicitor would identify the Organization he/she was representing, and describe the Organization's purported charitable purpose. The solicitor would then request that the donor either mail a check to the Organization or leave a check beneath the doormat or taped to the front

3

door of the donor's home to be retrieved by the Organization. If the prospective donor agreed to mail a check, the solicitor would mail him/her a receipt and thank-you letter, along with a return envelope for the donor to use to mail the donation. Although the thank-you letters mailed from the Organizations to the donors stated that the contributions would be used for charitable purposes, none of the contributions collected were used for their purported purpose.

According to trial testimony, the conspirators maintained a list of names and addresses of individuals who had previously donated to the Organizations. They also kept a list of elderly individuals because they were considered easy targets. One of Donna Day's roles in the conspiracy was to enter the names and addresses of those individuals who had donated to the Organizations into a computer database that generated the lead sheets, which allowed the conspirators to repeatedly solicit those victims.

The jury found Timothy and Donna Day guilty of the conspiracy charge and of 43 mail fraud charges, and found Hallock guilty of the conspiracy charge and of eight mail fraud charges. The district court found that a large portion of the victims were elderly, all were very susceptible, and many were repeatedly solicited, and applied a two-level vulnerable victim enhancement to Timothy and Donna Day's sentences. The district court declined to apply the vulnerable victim enhancement to

Hallock's sentence because it found no evidence that Hallock knew how the lead sheets were prepared or that donors were repeatedly solicited.

**I**

We begin our discussion with the appeal of Donna Day's sentence. Mrs. Day contends the district court erred in applying a two-level enhancement to her sentence for targeting uniquely vulnerable victims, pursuant to U.S.S.G. §3A1.1(b). Specifically, she argues that there was no evidence (1) that she knew or should have known the ages the of the victims, or (2) that she perceived them to be vulnerable merely because of their previous contributions the Organizations.

The district court's application of U.S.S.G. §3A1.1 presents a mixed question of law and fact, subject to <u>de novo</u> review, but the district court's determination of a victim's "vulnerability" is a factual finding given due deference. <u>United States v. Amedeo</u>, 370 F.3d 1305, 1317 (11th Cir. 2004). Section 3A1.1(b) provides for a two-level upward adjustment "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A "vulnerable victim" is "a person . . . who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, comment. (n.2). The adjustment should be applied only when "the defendant selects his victim due to the defendant's perception of the victim's vulnerability to the offense." <u>United States</u>

v. Arguedas, 86 F.3d 1054, 1058 (11th Cir. 1996).

The victims in this case, particularly the elderly and retired individuals, were repeatedly targeted by the defendants. In fraud cases, the repeated targeting of a victim, a practice called "reloading," constitutes evidence that the defendant knew the victim was particularly vulnerable to the fraud scheme. See, e.g., United States v. Ciccone, 219 F.3d 1078, 1087 (9th Cir. 2000); United States v. Brawner, 173 F.3d 966, 973 (6th Cir. 1999); United States v. Randall, 162 F.3d 557, 560 (9th Cir. 1998); United States v. Robinson, 152 F.3d 507, 511-12 (6th Cir. 1998).

Donna Day contends she did not know the co-conspirators were targeting the elderly, however, the basis of the district court's application of the vulnerable victim enhancement was not age, but rather, that the victims were particularly susceptible to the fraud scheme as evidenced by the fact that they were repeatedly targeted by the defendants. Donna Day had a direct role in compiling the names and addresses of those who had previously donated to the Organizations, and adding them to the lead sheets that were provided to the Organizations' solicitors. Donna Day's actions allowed, if not directed, the conspirators to repeatedly solicit those victims. Further, at her sentencing hearing, Donna Day's counsel acknowledged that individuals who had already contributed to the Organizations were repeatedly solicited for that specific reason.

6

This Court notes that decisions from other United States Courts of Appeal, upholding the 3A1.1 vulnerable victim upward adjustment, have also involved factual situations where an individual had been repeatedly victimized.

For example, in United States v. O'Neil, 118 F.3d 65 (2d Cir. 1997), the Second Circuit noted that while being elderly was "alone insufficient to render an individual 'unusually vulnerable' within the meaning of 3A1.1(b)," the enhancement was applicable because "an important part of the scheme was the reloading process, whereby individuals who already had been victimized by the scheme were contacted up to two more times and defrauded into sending more money to the companies." Id. at 75-76. The proof of reloading satisfied the Second Circuit's 3A1.1(b) definition of unusually vulnerable or particularly susceptible.

Also, in United States v. Jackson, 95 F.3d 500, 508 (7th Cir. 1996), the Seventh Circuit upheld the district court's application of the 3A1.1(b) enhancement, noting that some individuals had been victimized up to four times. The Seventh Circuit found that "the district court clearly determined that [the victims'] readiness to fall for the telemarketing rip-off, not once but twice . . . demonstrated that their personalities made them vulnerable in a way and to a degree not typical of the general population." Id. The Seventh Circuit further noted, and we, likewise, concur, "that the Guidelines do not imply that all of the victims must have been unusually

7

vulnerable in order to apply the enhancement. It is enough if the defendant targeted any of the victims because of their unusual vulnerability." Id. at 508 n.11.

Accordingly, we conclude that the district court properly determined that the victims in this case were "particularly susceptible" because they had been repeatedly solicited for further contributions to the Organizations. Thus, the court did not err in imposing the 3A1.1(b) vulnerable victim two-level enhancement.

## II

The remaining defendants, Timothy Day and Hallock, raise additional issues, which merit only brief discussion.

Timothy Day challenges his conviction on three grounds.[2] First, Timothy Day contends the district court abused its discretion by refusing to sever the conspiracy count from the mail fraud counts.[3] This argument is meritless because joinder of offenses and defendants under Fed. R. Crim. P. 8(b) is proper "where, as here, an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy." United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985). The

---

[2]Donna Day adopts all of Timothy Day's arguments, therefore, our opinion on these issues applies equally to both Donna and Timothy Day.

[3]We review a district court's refusal to sever defendants or counts for abuse of discretion. See United States v. Cole, 755 F.2d 748, 762 (11th Cir. 1985).

8

preference for joint trials is dictated by, among other things, considerations of judicial economy, conservation of public resources, and the need for the efficient administration of justice. United States v. Walker, 720 F.2d 1527, 1533 n.2 (11th Cir. 1983). The indictment here charged a single conspiracy, which gave rise to the mail fraud counts also charged in the indictment. Therefore, we find no abuse of discretion by the district court in joining the defendants and charges in this case and for refusing to sever the conspiracy from the other charges.

Second, Timothy Day contends that he was entitled to a mistrial because the district court found the testimony of a witness to be confusing and suggested to the government the manner in which it might be clarified.[4] This contention is also without merit. A district court judge has "wide discretion in managing the proceedings," he may comment on the evidence, question witnesses, elicit facts not yet adduced or clarify those previously presented, and maintain the pace of a trial by interrupting or cutting off counsel as a matter of discretion. United States v. Hawkins, 661 F.2d 436, 450 (5th Cir. Unit B 1981). The district court's effort to ensure that the testimony was clear to the jury did not constitute an abuse of its

---

[4]Hallock, also, adopts this argument, therefore, our opinion on this issue applies equally to all defendants. We review a district court's denial of motion for mistrial for an abuse of discretion. See United States v. Acevedo, 141 F.3d 1421, 1423 (11th Cir. 1998).

discretion in managing the trial.

Third, Timothy Day contends the Government violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963),[5] by failing to disclose prior to trial that a federal agent had interviewed his adult step-daughter. On this basis, he argues that the district court erred in denying his motion for a new trial.[6] We find no merit in Mr. Day's contentions because: (1) the Government did not suppress any Brady material; (2) Timothy Day could have easily obtained the information he contends was suppressed; and (3) Timothy Day failed to establish a reasonable probability that the outcome of the proceedings would have been different if the Government had disclosed the allegedly suppressed information. Therefore, the district court did not abuse its discretion in denying the motion for new trial.

Based on the foregoing, we affirm Timothy Day's convictions.

Having rejected his arguments for reversal of his conviction, we now turn to Timothy Day's sentencing argument, which he contends warrants a reversal of his

---

[5]To establish that he suffered a Brady violation, the defendant must prove that: (1) the Government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the Government suppressed the favorable evidence; and (4) the evidence was material. United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989).

[6]We review the district court's denial of a motion for new trial for abuse of discretion. See United States v. Vallejo, 297 F.3d 1154, 1163 (11th Cir. 2002) (where request for new trial was based on an alleged Brady violation); United States v. Garcia, 13 F.3d 1464, 1472 (11th Cir. 1994) (where request for new trial was based on newly-discovered evidence).

sentence. Mr. Day argues that the district court erred in refusing to reopen his sentencing hearing. At Mr. Day's sentencing, the district court imposed a vulnerable victim enhancement, but did not impose such an enhancement upon Hallock's sentence because it found that it was inapplicable with respect to Hallock. Timothy Day's contention is that Hallock should have also been subject to the vulnerable victim enhancement and that because he was not, Mr. Day's sentencing hearing should have been reopened to strike the enhancement as to him. Mr. Day does not assert any error with respect to his sentence or his enhancement. Instead, he takes issue with what the district <u>did</u> <u>not</u> do with respect to sentencing a co-conspirator. We summarily reject this argument and affirm the district court's sentencing of Timothy Day.

Co-conspirator, Hallock, also challenges his conviction. Hallock contends the district court abused its discretion by admitting the testimony of a witness, Crystal Luciani, and by failing to give any limiting instruction regarding the jury's consideration of that testimony.[7] We find nothing in the record to support Hallock's contentions that the testimony of Crystal Luciani was inappropriate or outside the scope of Fed. R. Evid. 404(b), nor do we find that there was a need for any limiting

---

[7]We review a district court's admission of testimony for an abuse of discretion. <u>See</u> <u>United States v. Gunn</u>, 369 F.3d 1229, 1236 (11th Cir. 2004).

instructions.  Therefore, we find this argument without merit and find no error on the part of the district court.[8]

Based on the foregoing, we hereby affirm the district court.

AFFIRMED.

---

[8]Hallock raises two further arguments that warrant no discussion: (1) that the district court erred in denying his motions for acquittal on the mail fraud and conspiracy counts; and (2) that the district court abused its discretion by denying his motion for new trial, in which he asserted that he possessed newly-discovered evidence in the form of the legal definition of the term "professional solicitor."  We find no merit in his arguments, and, therefore, affirm Hallock's convictions.