[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10201
Non-Argument Calendar
_____

D. C. Docket No. 05-60203-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CESAR MENENDEZ,
EDMOND GRIGORIAN,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 8, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Edmond Grigorian and Cesar Menendez appeal their convictions for conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. Menendez also appeals his sentence. The parties raise numerous issues that we will address in turn.

Evidentiary Issues

Grigorian and Menendez argue for the first time on appeal that the district court abused its discretion and violated the Confrontation Clause by limiting Grigorian's impeachment of Thomas Kling. They contend that, under Fed.R.Evid. 806, Grigorian should have been permitted to cross-examine Kling using out-of-court statements made by Grigorian to Kling after Kling had already testified regarding other out-of-court statements made by Grigorian to Kling. Grigorian also argues that this limitation on his cross-examination of Kling violated the Confrontation Clause.

Generally, we review a district court's evidentiary rulings only for an abuse of discretion. United States v. Taylor, 17 F.3d 333, 340 (11th Cir. 1994). The district court's discretion in limiting the scope of cross-examination is also subject to the requirements of the Sixth Amendment. Id. "[O]nce there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further

2

questioning is within the district court's discretion." Id. However, constitutional objections that are raised for the first time on appeal are reviewed only for plain error. United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir. 2006). Likewise, evidentiary objections raised for the first time on appeal are reviewed only for plain error. United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007). Therefore, our review here is only for plain error.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. Amend. VI. It guarantees criminal defendants an opportunity to impeach, through cross-examination, the testimony of witnesses for the prosecution. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994). The importance of full cross-examination increases where the witness is the star government witness or participated in the crimes for which the defendant is being prosecuted. Taylor, 17 F.3d at 340. "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." Fed.R.Evid. 801(c). However, such a statement is not hearsay if it is being offered against a party and is (A) the party's own statement; (B) the party has adopted the statement; (C) a statement by a person authorized by the party to make the statement; (D) a statement by the party's agent; or (E) a statement of a coconspirator of the party that was made in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2).

"When a hearsay statement, or a statement defined in [Fed.R.Evid.] 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." Fed.R.Evid. 806.

The district court did not violate Rule 806 because it was not applicable. Rule 806 is, by its own terms, only triggered when a hearsay statement, or a statement admitted pursuant to Rule 801(d)(2)(C), (D), or (E), has been admitted into evidence. Fed.R.Evid. 806; United States v. Price, 792 F.2d 994, 996-97 (11th Cir. 1986). No such statement admitted under one of those provisions was admitted here. Further, there was also no plain error regarding the Confrontation Clause. Even if there had been error, Menendez's substantial rights were not affected because Grigorian testified about all of the topics that Kling was not

4

permitted to testify about.

Menendez argues that the district court erred in excluding Erica Richard's testimony that James MacArthur had instructed Richard not to tell anyone that Russell MacArthur was part of AED. Menendez contends that the statement was in furtherance of a conspiracy and that Richard's testimony was a present sense impression.

As mentioned above, "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). However, such a statement is not hearsay if it is being offered against a party and is, inter alia, the statement of a co-conspirator of the party that was made in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E). Generally, hearsay is not admissible. Fed.R.Evid. 802. However, there are a variety of situations in which a hearsay statement is admissible. See Fed.R.Evid. 805, 806. One of those exceptions is for a present sense impression: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed.R.Evid. 803(1).

The district court did not abuse its discretion in excluding Richard's testimony regarding James MacArthur's statement. An out-of-court statement by a

co-conspirator that goes to the truth of the matter asserted is only a non-hearsay statement when it is being admitted against a party, not when it is being admitted by a party. Fed.R.Evid. 801(d)(2)(E). In addition, James MacArthur's statement is not a "present sense impression" because it does not describe anything that James MacArthur was perceiving at the time. See Fed.R.Evid. 803(1).

Menendez argues that the district court erred in admitting Mishkin's testimony and Menendez's interview with him because it was hearsay, not in furtherance of an alleged conspiracy, and highly prejudicial to Menendez because it was obtained through trickery.

As to Menendez, Menendez's statements to Mishkin were not hearsay because they were statements by a party (Menendez) admitted by its opponent (the government). See Fed.R.Evid. 801(d)(2)(A). It is irrelevant whether Menendez's statements were in furtherance of a conspiracy, because the exception regarding statements of the party opponent need not be in furtherance of the conspiracy. See Fed.R.Evid. 801(d)(2)(C). As to Menendez, Grigorian's statements to Mishkin were appropriately accompanied by a limiting instruction from the district court that they could only be considered against Grigorian.

Ordinarily, all of Mishkin's statements in the course of the interviews would be admissible as non-hearsay to place Menendez's statements in context. See

6

Price, 792 F.2d at 996. Here, the district court gave no such limiting instruction regarding Mishkin's statements. However, this did not result in error because all of Mishkin's statements regarding the nature or character of AED's business were always followed by a statement from Menendez affirming Mishkin's statement. Therefore, any of the potentially problematic statements by Mishkin were admissible as non-hearsay adoptive admissions by Menendez. See Fed.R.Evid. 801(d)(2)(B).

Menendez argues that the district court erred in permitting the government to elicit Menendez to testify that he had previously testified in front of a jury regarding the same or similar allegations to those raised in the instant case.

"The statements of a prosecutor will justify reversal of a conviction if they undermined the fairness of the trial and contributed to a miscarriage of justice. We review allegedly improper comments by the prosecutor on the particular facts of the case and in the context of the entire record. Because statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered." United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990) (quotations and citations omitted).

No reversal is warranted by the government's reference to the fact that

7

Menendez's testimony under oath in a prior proceeding was before a jury. The government gave no further indication that Menendez had been the defendant in a jury trial. Further, the jury was specifically instructed not to speculate on the nature of the prior proceeding, and this rectified any possible prejudice, see Smith, 918 F.2d at 1562.

Statements by the District Court

Next, Grigorian and Menendez argue that the district court plainly erred and violated their due process rights and right to counsel by repeatedly criticizing Grigorian's counsel, as well as Menendez's counsel. Further, they argue that it was improper for the district court to limit their counsel to questions not already asked by other counsel.

We review a district court's limitation on cross-examination only for an abuse of discretion. Taylor, 17 F.3d at 340. However, where, as here, no objection is lodged below, we review only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir. 2005).

"A district court judge has wide discretion in managing the proceedings, he may comment on the evidence, question witnesses, elicit facts not yet adduced or clarify those previously presented, and maintain the pace of a trial by interrupting

8

or cutting off counsel as a matter of discretion." United States v. Day, 405 F.3d 1293, 1297 (11th Cir. 2005). Even direct commentary on the evidence can be appropriate so long as the district court instructs the jury that they are the final arbiters of the facts. See United States v. Jenkins, 901 F.2d 1075, 1082-83 (11th Cir. 1990).

"A trial judge may not totally deny a defendant the opportunity to cross-examine a witness against him, whatever the time constraints, number of defendants being tried, or relationship between the defendants." United States v. Mills, 138 F.3d 928, 938 (11th Cir. 1998).

The district court did not plainly err, or abuse its discretion, in its commentary providing explanations for its evidentiary ruling or taking counsel to task for improper questions. Regardless, the district court instructed the jury to disregard anything it might have said and instructed the jury that it was the ultimate arbiter of the facts, eliminating any possible prejudice. See Jenkins, 901 F.2d at 1082-83. Further, the district court's limitation on repetitive questioning was not an abuse of discretion, much less plain error. See Day, 405 F.3d at 1297. The district court did not violate our holding in Mills because it permitted substantial cross-examination by defense counsel for both Menendez and Grigorian. See Mills, 138 F.3d at 938.

9

<u>Sufficiency of the Evidence</u>

Menendez argues that there was insufficient evidence to convict him because the government did not prove beyond a reasonable doubt that he had knowledge of the fraud while he was employed at AED.

This Court reviews de novo a defendant's claim that the evidence was insufficient to convict him, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." <u>United States v. Fulford</u>, 267 F.3d 1241, 1244 (11th Cir. 2001). "To uphold the lower court's denial of . . . judgment of acquittal and the jury's guilty verdict, this court need only find that a reasonable factfinder could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." <u>United States v. Keller</u>, 916 F.2d 628, 632 (11th Cir. 1990).

Menendez testified that he was unaware of the fraudulent scheme being perpetrated by AED until after he had left the company. The jury was entitled to assess Menendez's testimony and demeanor, conclude that he was not credible, and reject his statements "as a complete fabrication." <u>See</u> <u>United States v. Vazquez</u>, 53 F.3d 1216, 1225 (11th Cir. 1995). Indeed, a jury may not only discount a non-credible witness's testimony, but may "conclude the opposite of his testimony is true." <u>Id.</u> at 1225-26 (quotation omitted). This rule applies with particular force

where the fact in question is "highly subjective," such as "intent or knowledge."

Id. at 1225 (quotation omitted).  Here, there was sufficient evidence for the jury to

conclude beyond a reasonable doubt that Menendez had knowledge of the fraud.

Jury Instructions

Grigorian and Menendez argue[1] that the district court erred in instructing the

jury that he could be convicted under a theory of deliberate ignorance.  They assert

that a deliberate ignorance instruction is proper only where the sole *mens re* at

issue is knowledge, while the crimes with which he was charged required specific

intent or willfulness.  They emphasize that it is not possible for someone to act

with deliberate ignorance of the existence of a conspiracy and at the same time

willfully intend to join it.

Deliberate ignorance is the equivalent of knowledge.  United State v. Peddle,

821 F.2d 1521, 1524 (11th Cir. 1987).  Jury instructions are to be considered in the

context of the entire charge. United States v. Johnson, 139 F.3d 1359, 1366 (11th

Cir. 1998).  Where a party makes no objection to a jury instruction, we review only

---

[1] Menendez adopted by motion the arguments raised in Grigorian's brief.  However, the additional adoption attempted in Menendez's initial brief is ineffective because Grigorian did not make the arguments Menendez attempted to adopt.  Additionally, we do not address the various issues that Menendez abandoned by making only passing references to them in his initial brief, rather than presenting arguments.  See  United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006), cert. denied, 127 S. Ct. 2446, 167 L. Ed. 2d 1132 (2007)

11

for plain error.  United States v. Starke, 62 F.3d 1374, 1381 (11th Cir. 1995).  We may correct plain error if there is (1) error, (2) that is plain, and (3) that affects substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Arbolaez, 450 F.3d at 1291.

The district court did not plainly err.  Its "deliberate ignorance" instruction was explicitly limited to knowledge, not willfulness or specific intent.  Further, the district court repeatedly instructed the jury that the government was required to prove beyond a reasonable doubt willfulness or the specific intent to deceive before the jury could convict Grigorian or Menendez. "The instruction presented to the jury, therefore, permitted the jury to substitute [deliberate ignorance] for knowingly, but not willfully."  United States v. Schlei, 122 F.3d 944, 974 (11th Cir. 1997)

Sentencing Issues

Menendez argues that the district court clearly erred in determining that there were over 50 victims of his offenses and plainly erred in determining that the loss amount was over $1,000,000 and, therefore erred in applying sentencing enhancements under U.S.S.G. § 2B1.1 (b)(1)(I), (b)(2)(B).  He contends that the government failed to show that the 52 individuals to whom he made sales suffered

pecuniary harm or that the amount of this harm was $2,130,650. Menendez asserts that the government failed to prove loss amounts or that all of his customers were victims because some individuals made money from their rental machines.

We review a sentencing court's findings of fact, such as a loss determination, for clear error. United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006). However, where a party does not object to the district court's finding of fact, we review only for plain error. Id. Under the plain error standard, if (1) there is error; (2) that is plain; and (3) that affected substantial rights; then (4) this we may correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Under U.S.S.G. § 2B1.1(b)(2), increasing sentencing enhancements are to be applied where an offense involved increasing numbers of victims. U.S.S.G. § 2B1.1(b)(2). A 4-level enhancement is appropriate where there were 50 or more victims, but less than 250 victims. U.S.S.G. § 2B1.1(b)(2)(B), (C). In relevant part, a victim is "any person who sustained any part of the actual loss." U.S.S.G. § 2B1.1, comment. (n.1).

Under U.S.S.G. § 2B1.1(b)(1), increasing enhancements are applied where a crime resulted in increasing amounts of loss. U.S.S.G. § 2B1.1(1). A 16-level enhancement is called for where the amount of loss is more than $1,000,000, but

not more than $2,500,000. U.S.S.G. § 2B1.1(b)(1)(I), (J). The amount of loss is the greater of the intended or actual loss. U.S.S.G. § 2B1.1, comment. (n.3(A)). In this case, the actual loss is the applicable figure. Actual loss means the reasonably foreseeable economic harm that resulted from the offense. U.S.S.G. § 2B1.1, comment. (n.3(A)(i), (iii)). Loss amounts shall be reduced by "the fair market value of the property returned and the services rendered, by the defendant . . . to the victim before the offense was detected." U.S.S.G. § 2B1.1, comment. (n.3(E)(i))). In a fraudulent investment scheme such as this one, the loss amount for a particular victim cannot be reduced by value transferred to that victim in excess of the victim's principal "(i.e., the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme)." U.S.S.G. § 2B1.1(n.3(F)(v))). The district court "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1, comment. (n.3(C)).

The government bears the burden of proving by a preponderance of the evidence the loss amount when it is used to enhance a defendant's offense level. United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." United States v. Polar, 369 F.3d 1248,

14

1255 (11th Cir. 2004). "The sentencing guidelines recognize that often the amount of loss caused by fraud is difficult to determine accurately. Thus, courts may reasonably estimate that amount." United States v. Miller, 188 F.3d 1312, 1317 (11th Cir. 1999). "While estimates are permissible, courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." Sepulveda, 115 F.3d at 890.

The district court's determination that all 52 of Menendez's purchasers were victims was not clearly erroneous. There was no evidence that any of the purchasers—taking into account incidental expenses (such as equipment to operate the machine, fees to location owners, and storage fees for unprofitable machines), rental receipts, and eventual sale of the machine—was able to offset their damages by enough to cover their initial outlay to AED. Therefore, all of the purchasers were victims. See U.S.S.G. § 2B1.1, comment. (n.1). The district court did not clearly err in determining that there were more than 50 victims and applying the appropriate enhancement.

Further, the district court did not plainly err in determining that there was no offset at all and that, therefore, the initial $2,130,650 in payments made to AED by the victims was a reasonable estimate of the amount of loss. The average incidental losses to the purchasers, above and beyond those initial payments,

substantially exceeded the average value, if any, that they received.

After careful consideration of the briefs of the parties, and thorough review of the record, we find no reversible error. Accordingly, Grigorian and Menendez's convictions and sentences are

**AFFIRMED.**