[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10285

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-00086-CR-HLM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARACHURE BENICIO BAZA,
a.k.a. Benny,
ELIUD RIOS ESCOBAR,
a.k.a. Eliu,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(June 17, 2010)

Before BLACK, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

**I.**

Appellants-Defendants Carachure Benicio Baza, a/k/a Benny ("Baza") and Eliud Rios Escobar, a/k/a Eliu ("Escobar"), along with six other co-conspirator defendants, were indicted for: (1) conspiracy to possess with intent to distribute at least 5 kilograms or more of a mixture containing cocaine, beginning no later than February 2006 and continuing until approximately December 11, 2006, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846 (Count 1); and (2) conspiracy to transport and attempt to transport funds from a place in the United States to Mexico with the intent to promote the carrying on of specified unlawful activity, beginning in or about February 2006 and continuing until approximately December 11, 2006, in violation of 18 U.S.C. § 1956(a)(2)(A), (h) (Count 2). The indictment also contained a forfeiture count, listing approximately $1.4 million in U.S. currency seized in relation to the offenses.

Defendants Baza and Escobar proceeded to trial on both counts. The government's witnesses included unindicted co-conspirator Alejandro Rivas-Najera, U.S. Drug Enforcement Administration agents, and police officers. The government also introduced evidence of, inter alia, seized drug money and transcripts of telephone calls obtained through wiretaps. After a five-day trial, the

jury convicted Defendants Baza and Escobar on Counts 1 and 2. The district court sentenced Baza to 360 months' imprisonment on Count 1 and 240 months' imprisonment on Count 2, to run concurrently; 5 years' supervised release on Count 1 and 3 years' supervised release on Count 2, to run concurrently; and a $200 special assessment. The district court sentenced Escobar to 121 months' imprisonment on Counts 1 and 2, to run concurrently; 5 years' supervised release on Count 1 and 3 years' supervised release on Count 2, to run concurrently; and a $200 special assessment.

## II.

On appeal, Defendants Baza and Escobar both raise multiple issues as to their convictions. Defendant Baza appeals his sentence, but Defendant Escobar does not challenge his sentence. The issues presented for appellate review are:

Baza and Escobar

1.     Whether the district court erred in denying Defendants' motions to suppress evidence and statements obtained during the officers' December 11, 2006 traffic stop and search of Escobar's pick-up truck and arrest of Baza and Escobar, who had $289,880 in cash covered in clear plastic wrap inside two thirteen-gallon garbage bags with red tie

3

strings in the bed of Escobar's pick-up truck;[1] and

2.   Whether the district court erred in admitting certain expert and lay testimony on the patterns and practices of drug-smuggling organizations and the meaning of various coded words.[2]

Baza

1.   Whether the district court erred in allowing the government to withdraw what Baza refers to as a "stipulation" and admit evidence that expanded the scope of the suppression hearing without notice to defense counsel;[3]

2.   Whether the evidence adequately supported the sentencing court's finding that Baza was accountable for 195 kilograms of cocaine for purposes of calculating Baza's advisory guidelines range;[4] and

---

[1]"We review the district court's denial of a motion to suppress evidence as a mixed question of law and fact." United States v. Ponce-Aldona, 579 F.3d 1218, 1221 (11th Cir. 2009), cert. denied, 130 S. Ct. 1094 (2010). We review the district court's legal conclusions de novo, and its findings of fact for clear error, construing the facts in the light most favorable to the prevailing party. Id. Furthermore, we "may affirm the denial of a motion to suppress on any ground supported by the record." United States v. Caraballo, 595 F.3d 1214, 1222 (11th Cir. 2010).

[2]We review the admissibility of expert testimony for abuse of discretion and cannot reverse "unless the ruling is manifestly erroneous." United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).

[3]We review a district court's decision regarding the admissibility of evidence for abuse of discretion. United States v. Schlei, 122 F.3d 944, 990 (11th Cir. 1997).

[4]We state the standard of review for this issue and the next below. See infra notes 7 & 9.

4

3.    Whether Baza's sentence violates <u>Booker</u> because it was based on a drug quantity of 195 kilograms of cocaine, which amount was not specifically charged in the indictment or proven to a jury beyond a reasonable doubt.

<u>Escobar</u>

1.    Whether the evidence was sufficient to support Escobar's convictions;[5]

2.    Whether the district court erred in denying Escobar's motion for a new trial under Federal Rule of Criminal Procedure 33, which motion was based largely on the claim that co-conspirator Rivas-Najera's testimony was unreliable.[6]

## III.

After carefully reviewing the record in this case, reading the parties' briefs, and having the benefit of oral argument, we conclude that all of the Defendants' issues lack merit and only three issues warrant further discussion.

**A.    Suppression Motions**

---

[5]"We review <u>de novo</u> whether there is sufficient evidence in the record to support a jury's verdict . . . , viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." <u>United States v. Beckles</u>, 565 F.3d 832, 840 (11th Cir.), <u>cert. denied</u>, 130 S. Ct. 272 (2009).

[6]Denial of a motion for a new trial is reviewed for abuse of discretion. <u>United States v. Day</u>, 405 F.3d 1293, 1297 n.6 (11th Cir. 2005).

As to the suppression issue, Defendants have not shown error in the district court's determination that (1) there was probable cause to support the stop and search of Escobar's pick-up truck for drug proceeds, and, alternatively, (2) there was probable cause to stop Escobar's pick-up truck for carrying an unsecured load, in violation of O.C.G.A. § 40-6-248.1, and that, after that traffic stop, the police obtained valid consent to search the vehicle. The record amply supports each finding, and the district court did not err in its legal conclusions.

## B.     Baza's Sentence

Baza has not shown the district court erred in sentencing him, pursuant to U.S.S.G. § 2D1.1(c)(1), based on its finding that the conspiracy involved 195 kilograms of cocaine because reliable and specific evidence supports this finding.[7]

At trial, co-conspirator Rivas-Najera testified that sometime after March 2006 he made six trips from the United States to Mexico and back, carrying cocaine into the United States on each trip, and then transporting money back into Mexico. Rivas-Najera estimated he transported a total of over 200 kilograms of cocaine during those six trips. Baza paid Rivas-Najera $199,000 for these six

---

[7]When the district court makes a finding as to the quantity of drugs to establish the base offense level in its calculation of the advisory guidelines range, we review that drug quantity finding for clear error. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000).

6

shipments.[8] Baza also arranged for the pick-up and drop-off of the van Rivas-Najera used for most of the trips, told Rivas-Najera where to pick up the drugs, and accompanied him on one of the trips. In addition, Rivas-Najera testified that Baza coordinated drug pick-ups and drop-offs with co-conspirator Jesus Pineda and that Pineda would wait at the drop-off point to ensure the drugs were delivered and then would load the van with money. Wiretap and surveillance evidence showed Pineda was intending to make a shipment in late October 2006. DEA Special Agent Crosby Jones testified Pineda was arrested on October 25, 2006 and found with 55 kilograms of cocaine hidden in the vehicle in which he was traveling. Rivas-Najera was arrested on October 27, 2006 and found with $489,000 in cash in his van on his way back to Mexico.

Baza's presentence investigation report ("PSI") cited Rivas-Najera's testimony about the six trips and stated that, based on a "conservative estimate of 30 kilograms" for each trip, Baza should be held responsible for 180 kilograms of cocaine. The PSI also stated that, given that Baza was caught with $289,880 in cash, and estimating that one kilogram of cocaine was equal to $19,000 "as used in

_____

[8]On Rivas-Najera's first trip, he transported over 30 kilograms of cocaine and was paid $27,000; on his second trip, he transported over 30 kilograms and was paid $32,000; for the third, fourth, and fifth trips, he was paid $35,000 for each (there was no testimony about the specific drug quantities transported on the third, fourth, and fifth trips); and on the sixth trip, he transported 45 kilograms and was paid $35,000.

other similar control buys," the $289,880 in cash seized from Baza should be considered the equivalent of 15 kilograms of cocaine. The PSI added these two figures (180 and 15 kilograms) and determined Baza's offense involved 195 kilograms of cocaine.

At sentencing, Baza objected to the 195-kilogram drug amount the PSI attributed to him, arguing the PSI should not have credited Rivas-Najera's testimony because he had many reasons to lie and because Baza was never found with any drugs. The district court overruled Baza's objections and adopted the 195-kilogram amount recommended by the PSI. Using this 195-kilogram amount, the district court found Baza's total offense level was 42, which, with a criminal history category of I, yielded an advisory guidelines range of 360 months' to life imprisonment on Count 1 and up to 240 months' imprisonment on Count 2. As stated above, the court sentenced Baza to 360 months' imprisonment on Count 1 and 240 months' imprisonment on Count 2, to run concurrently.

Because Rivas-Najera was a co-conspirator and considering Rivas-Najera's testimony about Baza's significant role in arranging Rivas-Najera's drug-smuggling trips, the record amply supports the conclusion that Baza can be held responsible for the over 200 kilograms of cocaine transported during the six trips. See United States v. Andrews, 953 F.2d 1312, 1319 (11th Cir. 1992) (stating that,

for sentencing purposes, a defendant convicted of a conspiracy offense may be held responsible for acts of others that were reasonably foreseeable and in connection with the conspiracy); see also United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994) (evaluating the "similarity, regularity, and temporal proximity" between the offense of conviction and the uncharged conduct to determine whether the uncharged conduct is relevant conduct for purposes of calculating a defendant's base offense level).  And in light of Rivas-Najera's testimony about Baza's close working relationship with Jesus Pineda, Baza also can be held responsible for an additional 55-kilogram shipment of cocaine transported by Pineda.  Other than Rivas-Najera's cooperating with the government to receive a favorable sentence, Baza points to no other specific reason why his testimony should be discredited.  See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005) (stating that, where a sentencing court bases its drug quantity finding on its decision to credit one witness's "coherent and facially plausible" testimony that is not contradicted by extrinsic evidence, that finding "can virtually never be clear error") (citations omitted).

Accordingly, a preponderance of evidence shows Baza can be held responsible for at least these two drug quantities of 200 and 55 kilograms of cocaine, totaling 255 kilograms.  See United States v. Lawrence, 47 F.3d 1559,

1566 (11th Cir. 1995) (concluding the government must establish a quantity of drugs by a preponderance of the evidence and by "reliable and specific" evidence); United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998) (stating a finding as to the quantity of drugs to establish the base offense level is permissible if it is "based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant," but it cannot be "merely speculative"). Thus, Baza has shown no error in the district court's finding attributing to him 195 kilograms of cocaine.

Baza also argues his sentence violates United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), because it is based on a drug amount not proven to the jury.[9] This argument lacks merit too. Booker requires facts to be submitted to a jury and proven beyond a reasonable doubt only when those facts are used to increase a defendant's sentence above the statutory maximum sentence. Booker 543 U.S. at 232, 125 S. Ct. at 749; see also Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000). Baza was convicted of conspiracy with intent to distribute at least 5 kilograms of cocaine under 21 U.S.C. § 841, which carries a statutory maximum of life imprisonment. 21 U.S.C.

---

[9]Challenges under Booker to a district court's enhancing a sentence based on facts not proven to a jury beyond a reasonable doubt are reviewed de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). Even if such a Booker error occurs, we will reverse only if that error is harmful. Id.

§ 841(b)(1)(A)(ii)(II). Because the statutory maximum was life imprisonment and Baza was sentenced to 360 months, it was impossible for the district court to rely on facts that were used to increase Baza's sentence above the statutory maximum. There is no <u>Booker</u> error in Baza's sentence.

## IV.

In conclusion, we affirm Defendant Baza's convictions and sentence on Counts 1 and 2 and Defendant Escobar's convictions on Counts 1 and 2.

**AFFIRMED.**