[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12027
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20834-KMM-2


UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

CHARMAINE ANNE KING,

                                                            Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 4, 2015)

Before TJOFLAT, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Charmaine Anne King was sentenced to 57 months in prison after being convicted of conspiracy to commit mail and wire fraud, three counts of mail fraud, and two counts of wire fraud.  At trial, the government introduced evidence showing that King's co-conspirators sent solicitation letters to elderly victims falsely informing them that they had won a significant sum in a sweepstakes. These letters included a fraudulent cashier's check and asked the recipients to send money back in order to cover assorted fees and taxes.  Although King did not directly contact any victims, she received these payments, kept a percentage for herself, and sent the remainder to her co-conspirators.

On appeal, King argues that the district court erred by (1) admitting evidence related to a United States Postal Service administrative complaint which described the fraudulent scheme; (2) failing to compel the government to turn over a postal inspector's handwritten notes pursuant to the Jencks Act; (3) allowing King's co-conspirator—who had previously pleaded guilty—to invoke her Fifth Amendment right not to testify; (4) applying a twelve-level enhancement under United States Sentencing Guidelines § 2B1.1(b)(1)(G) based on its finding that the fraudulent scheme resulted in an actual financial loss of between $200,000 and $400,000; (5) applying a two-level enhancement under § 2B1.1(b)(1)(B) based on its finding that a substantial part of the scheme was committed from outside the United States; and

2

(6) applying a two-level enhancement under § 3A1.1(b)(1) based on its finding that the scheme targeted "vulnerable victims."  After careful review, we affirm.

I.

First, we address King's argument that the district court erred by admitting a USPS administrative complaint and cease-and-desist order describing the fraudulent scheme.  King's defense was based in part on her testimony that she believed she was working for a legitimate collections agency.  In order to rebut this testimony, the government argued that King knew the scheme was fraudulent because she continued to participate in it even after inspectors from the USPS told her in person and in writing (through the administrative complaint and cease-and-desist order) that she was involved in fraud.  King argues that the district court should have excluded this evidence as unfairly prejudicial under Federal Rule of Evidence 403 and as an inadmissible settlement offer under Federal Rule of Evidence 408(a)(1).

We review the district court's evidentiary rulings for an abuse of discretion. United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir. 2005).  Relevant evidence is generally admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action."  Fed. R. Evid. 401, 402. Nonetheless, under Federal Rule of Evidence 403, relevant evidence may be

3

excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Because Rule 403 is "an extraordinary remedy that should be used sparingly . . . we look at the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Flanders, 752 F.3d 1317, 1335 (11th Cir. 2014) (quotation marks and citation omitted).

We find no abuse of discretion here. First, the evidence was relevant—it tended to make it more likely that King acted with knowledge that she was participating in a fraudulent scheme. The USPS complaint alleged that King received money from victims of a fraudulent sweepstakes and forwarded the money to others involved in the scheme. And the cease-and-desist order included King's acknowledgement that she had read the complaint well before her participation in the scheme ended.

Second, the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice, misleading the jury, or needlessly presenting cumulative evidence. The probative value of the evidence was strong. It directly rebutted King's testimony that she was an unwitting participant in the scheme and did not know that it was a fraud. And although the complaint made

4

allegations against King, it did not state the allegations as fact. Similarly, the order expressly stated that it did not constitute an admission of any unlawful conduct. Finally, the evidence was not needlessly cumulative. While postal inspectors testified that they told King she was involved in a fraud, the complaint and order showed that King received a detailed description of the fraud and corroborated the inspectors' testimony.

Neither was this evidence inadmissible under Federal Rule of Evidence 408(a)(1), which excludes evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise" a claim in order to prove the validity of a disputed claim. That rule simply has no application because this evidence was not offered to prove the validity of the complaint's allegations. Instead, it was offered to show that King continued to participate in the scheme even after she was told that it was fraudulent. See Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose . . . ."). Thus, the district court did not abuse its discretion by admitting the USPS administrative complaint and cease-and-desist order.

## II.

We next address King's argument that the district court erred by failing to compel the government to turn over a USPS inspector's hand-written notes about

his meeting with King.  The Jencks Act provides that, after a government witness has testified on direct examination, "the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).  In turn, the Act defines a statement as (1) a written statement made by the witness and "signed or otherwise adopted or approved by him"; (2) "a stenographic, mechanical, electrical, or other recording, or a transcript thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement"; or (3) a statement made by the witness to a grand jury.  Id. § 3500(e).

Thus, "[g]overnment agents' reports of witness interviews and summaries of those interviews are not Jencks Act statements unless they are (1) substantially verbatim, contemporaneously recorded transcripts, or (2) signed or otherwise adopted by the witness."  United States v. Jordan, 316 F.3d 1215, 1255 (11th Cir. 2003).  As used in the Jencks Act, "'substantially verbatim' means using the nearly exact wording or phrasing the witness uttered during the interview; if only some of the exact wording is used, it is not Jencks material."  Id.

The defendant has the burden of showing that the requested materials are "statements" as defined by § 3500(e) and that they relate to the subject matter of

6

the witness's testimony.  United States v. Pepe, 747 F.2d 632, 657 (11th Cir. 1984).  An agent's notes about a witness interview do not constitute Jencks Act material if a defendant provides no evidence that the witness adopted or approved the report, or that the agent read back the report and asked the witness to confirm its accuracy.  See, e.g., Jordan, 316 F.3d at 1255; United States v. Delgado, 56 F.3d 1357, 1364 (11th Cir. 1995).

The district court did not err by refusing to compel the government to produce the postal inspector's notes as Jencks Act material.  King presented no evidence that she adopted, approved, or confirmed the accuracy of the notes.  Although the inspector testified that he took notes to "keep track" of what King told him, this falls well short of showing the inspector used "nearly the exact wording or phrasing" said by King during the interview.  See Jordan, 316 F.3d at 1255.  Thus, King failed to show that the inspector's handwritten notes are "statement[s]" within the meaning of the Jencks Act.

### III.

Next, we address King's argument that the district court erred by allowing her co-defendant Althea Peart, who had already pleaded guilty but had not yet been sentenced, to invoke her Fifth Amendment privilege against self-incrimination. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  A witness

7

can assert her Fifth Amendment right in any proceeding where her answers might incriminate her in future criminal proceedings.  Minnesota v. Murphy, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984).  And although a defendant has a Sixth Amendment right to compulsory process to obtain favorable testimony, a "valid assertion of the witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights."  United States v. Goodwin, 625 F.2d 693, 700 (5th Cir. 1980).[1]  We have previously held that "a defendant retains the Fifth Amendment privilege against self-incrimination prior to sentencing, despite having entered a guilty plea, because of the possible impact that compelled testimony may have on the defendant's as yet undetermined sentence."  United States v. Kuku, 129 F.3d 1435, 1438 (11th Cir. 1997) (per curiam).

Our holding in Kuku forecloses King's argument here.  Because Peart had not yet been sentenced, she had "reasonable cause" to fear increased liability—her testimony could have exposed her to a longer sentence based on the scheme's characteristics.  See United States v. Argomaniz, 925 F.2d 1349, 1353 (11th Cir. 1991) (a witness's privilege against self-incrimination can be invoked when she has "reasonable cause to apprehend danger of criminal liability" (quotation omitted)).  Thus, the district court did not err by allowing Peart to invoke her Fifth

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981. Id. at 1209.

Amendment right not to testify.

## IV.

Finally, we address King's argument that the district court misapplied the Sentencing Guidelines. Specifically, she argues that the district court erred by applying a twelve-level enhancement under USSG § 2B1.1(b)(1)(G) based on its finding that the scheme resulted in an actual loss of $200,000 to $400,000; a two-level enhancement under § 2B1.1 based on its finding that a substantial part of the fraudulent scheme was committed from outside the United States; and a two-level enhancement under § 3A1.1(b)(1) based on its finding that King knew or should have known that the scheme targeted vulnerable victims. "In determining whether the district court misapplied the Guidelines, we review those factual findings that guide the court's application of the Guidelines for clear error." United States v. Bradley, 644 F.3d 1213, 1283 (11th Cir. 2011). Under this deferential standard of review, we will affirm the district court's findings as long as they are "plausible in light of the record reviewed in its entirety." United States v. Ladson, 643 F.3d 1335, 1341 (11th Cir. 2011) (quotation omitted).

To begin, the district court's enhancement under § 2B1.1(b)(1)(G) is supported by the record. That provision requires a twelve-level increase if a defendant's offense caused an actual loss of between $200,000 and $400,000. Actual loss is defined as the "reasonably foreseeable pecuniary harm that resulted

9

from the offense." USSG § 2B1.1, comment. n. 3(A)(i). Although the district court's loss calculation may not be mere speculation, the court "is not required to be completely precise, and its decision will survive review as long as it makes a reasonable estimate." United States v. Walker, 490 F.3d 1282, 1300 (11th Cir. 2007).

Here, the district court first estimated a per-victim loss of $4,645.74 based on payments made by 14 identified victims. It then multiplied this amount by the 52 total packages that victims sent to King or one of her co-conspirators, resulting in a total actual loss of approximately $240,000.[2] This is the precise methodology suggested by the Guidelines in cases where, as here, a district court does not have full information about the loss suffered by each victim. USSG § 2B1.1, comment. n. 3(C). Thus, the district court's loss estimation was reasonable, and it did not err by applying a twelve-level enhancement based on that estimate.

Second, the district court did not err by applying a two-level enhancement under § 2B1.1(b)(10)(B) based on its finding that "a substantial part of [the] fraudulent scheme was committed from outside the United States." As King herself acknowledges, the government presented evidence showing that King sent victims' money to Jamaica and Africa, victims received mail postmarked in Canada, victims received phone calls from Canadian phone numbers, and Peart

---

[2] The majority of victims had not been identified at the time that King was sentenced.

sent a device used to mask telephone numbers to a co-conspirator in Canada. Based on this evidence, and under our deferential standard of review, we cannot say that the district court's finding was implausible based on the record before us. See United States v. Singh, 291 F.3d 756, 759, 762 (11th Cir. 2002) (affirming application of § 2B1.1(b)(10)(B) where defendant did not travel outside United States, but "evidence clearly established that some of the conspiracy's acts occurred outside of the United States").

Finally, we affirm the district court's application of a two-level enhancement under § 3A1.1(b)(1) based on its finding that King "knew or should have known that a victim of the offense was a vulnerable victim." A vulnerable victim is someone "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1(b)(1), comment. n. 2. Beyond that, "[i]n fraud cases, the repeated targeting of a victim . . . constitutes evidence that the defendant knew the victim was particularly vulnerable to the fraud scheme." United States v. Day, 405 F.3d 1293, 1296 (11th Cir. 2005). In this case, King knew that the scheme targeted elderly victims, and that it extracted multiple payments from those victims. For this reason, the district court did not clearly err by finding that King knew or should have known that the scheme targeted vulnerable victims.

**AFFIRMED.**

11